IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| PAM SQUARED AT DOVER, LLC, | |
| Plaintiff | |
| v. | NO. |
| MEDCORE PARTNERS, LLC, | JURY TRIAL DEMANDED |
| Defendant | |

**COMPLAINT**

Plaintiff PAM Squared at Dover, LLC, by and through its counsel, Barley Snyder LLP, hereby files the following Complaint against MedCore Partners, LLC. as follows:

**PARTIES**

1. Plaintiff PAM Squared at Dover, LLC ("PAM") is a Pennsylvania limited liability company with its principal place of business located at 1828 Good Hope Road, Suite 102, Enola, Pennsylvania 17025. PAM is a wholly owned subsidiary of PAM Squared, LLC ("PAM Squared").

2. Post Acute Medical, LLC is a Delaware limited liability company with its principal place of business and corporate office located at 1828 Good Hope Road, Suite 102, Enola, Cumberland County, Pennsylvania 17025.

3. Defendant MedCore Partners, LLC ("MedCore") is a Texas limited liability company with an address of 12377 Merit Drive, Suite 500, Dallas, Texas 75251. Upon information and belief, based on a search of the public records of the Texas Comptroller of Public Accounts and MedCore's website, the members of MedCore are: (1) BNB Holdings, LLC, a Texas limited liability company whose sole member is Brian Bollich who has an address of 5331 Willis Avenue,

Dallas, Texas 75206; (2) Farcal Land LLC, a Texas limited liability company whose sole member is Nicholas R. Farris who has an address of 504 Renfro Ct., Irving, Texas 75063; (3) Kintla Holdings, LLC, a Texas limited liability company whose sole member is Michael S. Graham who has an address of 2500 N. Houston St. Apt. 2011, Dallas, Texas 75219; and (4) Libby Enterprises, Inc., a Texas corporation with a principal place of business at 9232 Chiswell Rd., Dallas, Texas 75238-2514 (and whose president is Kyle Libby).

4. Dover DE IRF, LP f/k/a PAM Dover IRF, LLC ("Dover DE IRF") is a Texas limited partnership with an address of 15120 Northwest Fairway, Suite 190, Houston, Texas 77040-3205.

5. Michael Graham is a principal in MedCore and in Dover DE IRF, and authorized to act on behalf of each.

## JURISDICTION & VENUE

6. Jurisdiction is properly within this Court, as the matter in controversy exceeds the sum or value of $75,000, exclusive of interest or costs, and is between citizens of different states. 28 U.S.C. § 1332(a)(1).

7. PAM is a Pennsylvania limited liability company with its principal place of business in the Commonwealth of Pennsylvania, and is a citizen of the Commonwealth of Pennsylvania.

8. MedCore is a Texas limited liability company with its principal place of business in the State of Texas, and is a citizen of the State of Texas.

9. Venue in this judicial district is proper pursuant to Section 1391(b) of the Judicial Code, 28 U.S.C. §1391(b)(1) and (b)(2), as MedCore "resides" in this judicial district, as such term is defined in 28 U.S.C. §1391(c), and, alternatively, because a substantial part of the events or omissions giving rise to the claim occurred in this judicial district.

10. MedCore is subject to personal jurisdiction in this judicial district and, as such, is deemed to reside in this judicial district under 28 U.S.C. §1391(c)(2).

11. All communications from MedCore to PAM regarding the matters giving rise to this claim were received by PAM in this judicial district. All communications from PAM to MedCore regarding the matters giving rise to this claim were generated from PAM in this judicial district.

12. All relevant documents, including the 2015 Agreement, 2017 Development Agreement, and Lease, were all transmitted to PAM, negotiated by PAM, and executed by PAM in this judicial district.

## FACTS

13. Prior to 2015, Post Acute and MedCore engaged in several transactions in which MedCore and/or related entities would act as the owner and developer of a building that was leased to Post Acute and/or its related entities for operation of an inpatient rehabilitation hospital.

14. In these transactions, MedCore and Post Acute would enter into contracts in which the MedCore entity would develop, construct, and own the property, whereupon the Post Acute entity would own and operate its hospital pursuant to a long-term lease for the property.

15. Following completion of construction and opening of the medical facility, the MedCore entity would then sell the real estate and assign the long-term lease to a third party, for example a real estate investment trust, at a significant profit.

16. When Post Acute determined to construct and operate such a project in Dover, Delaware, it provided MedCore with the opportunity to develop and construct the hospital.

17. Specifically, "PAM, Squared, LLC (or a to-be-formed subsidiary of PAM Squared, LLC)" and MedCore entered into a Development Agreement dated February 17, 2015 ("2015 Development Agreement") to develop and construct an inpatient physical rehabilitation hospital

3

in Delaware (the "Project"). (A copy of the 2015 Development Agreement is attached hereto as Exhibit "A" and incorporated herein by reference). PAM, a Post Acute affiliated entity, is the "to-be-formed subsidiary of PAM Squared, LLC" referenced in the 2015 Development Agreement.

18. As with the prior projects, MedCore would purchase and develop the real estate, and PAM would enter into a long-term lease and own and operate the hospital when construction was complete.

19. The 2015 Development Agreement provided that PAM "hereby engages MedCore and grants to it the sole and exclusive right, subject to the terms of this Agreement, to arrange, review, supervise, manage, and coordinate all development, planning, marketing, and financing services for the Project, and to form the ownership entity for some or all of investors, including MedCore, that will own the Project." (Exhibit A – 2015 Development Agreement, § 1.1).

20. Pursuant to the terms of the parties' contract, PAM would "lease the Project from an affiliate of MedCore pursuant to an absolute triple net lease. . . ." (Exhibit A – 2015 Development Agreement, §1.3).

21. The term of the lease was to be for seventeen years with two five year options. (Exhibit A – 2015 Development Agreement, §1.5). Rental payments were to be calculated based upon a percentage of the total cost for the Project. *Id*.

22. In addition to reimbursement to MedCore of out-of-pocket expenses up to $20,000, payment to MedCore was to be as follows:

> 2.1 <u>Development Fee</u>. In consideration of the performance of services provided in this Agreement, MedCore shall be entitled to receive a development fee equal to the lesser of (i) $550,000 or (ii) three and one half percent (3.5%) of the total Project Budget. The timing of the payment of the Development Fee shall be subject to the approval by the capital sources for the Project, but it is likely that MedCore shall receive up to 50% of the Development Fee upon the closing of the capital for the Project with the balance of the Development Fee to be paid to MedCore ratably over the course of the construction period needed to complete the Project.

4

(Exhibit A – 2015 Development Agreement, §2.1).

23. In the prior transactions between Post Acute and MedCore, Post Acute did not receive any consideration when MedCore "flipped" the completed real estate, containing the long-term lease, to a third-party.

24. In connection with the Dover Project, PAM required, and MedCore agreed, that a provision be contained within the Development Agreement that provided PAM with a share of certain proceeds in the event MedCore or its affiliate sold the property for a substantial profit.

25. Accordingly, the 2015 Development Agreement contained a provision entitled "Profit Participation" which specified that, "[u]pon the sale of the Project by MedCore, Operator [PAM] shall be entitled to receive fifty (50%) of all profits (net of transaction costs and fees) in excess of a two percent (2%) cap rate appreciation in value." (Exhibit A – 2015 Development Agreement, §3.9).

26. The payment to PAM pursuant to Section 3.9 of the 2015 Development Agreement shall be referred to as the "Profit Participation Payment". The Profit Participation Payment was a material term of the parties' agreement and PAM would not have engaged MedCore on the Dover Project but for its agreement to that term.

27. Between February 2015 and October 2016, PAM pursued the administrative processes required for construction and opening of a hospital in the State of Delaware, which includes a process known as a "Certificate of Public Review" or "CPR." A hospital in Delaware may only be opened and operated upon approval and issuance of a CPR by the Delaware Health Resources Board.

28. The approval of PAM's application for CPR was finally issued by the DHRB on January 14, 2016 and a supplemental order was issued in October 2016 regarding the precise location of the hospital.

29. MedCore was involved throughout the process in its role as developer under the Development Agreement.

30. In December 2016, MedCore commenced discussions on extension of the 2015 Development Agreement, which provides that MedCore's exclusive right to serve as developer terminated in February 2017.

31. Specifically, Section 1.1 of the 2015 Development Agreement, entitled "Engagement of MedCore", provides that PAM "hereby engages MedCore and grants to it the sole and exclusive right, subject to the terms of this Agreement, to arrange, review, supervise, manage, and coordinate all development, planning, marketing, and financing services for the Project, and to form the ownership entity for some or all of investors, including MedCore, that will own the Project. **The rights granted in the preceding sentence shall expire within twenty-four (24) months of the date of this Agreement.**"  (Exhibit A – 2015 Development Agreement at § 1.1)(emphasis added).

32. Because MedCore sought to continue in its role as developer of the Project, in January 2017, Michael Graham forwarded an electronically executed development agreement that was nearly identical to the 2015 Development Agreement. The communication included a comparison of the 2015 and proposed 2017 Agreement, along with a "clean" copy of the proposed 2017 agreement that was electronically signed by Graham. A copy of the January 2017 communication and the agreements are attached hereto as Exhibit "B."

33. The parties engaged in a series of discussions and agreed in principal to the agreement sent by Graham previously, with minor variations, on February 15, 2017 ("2017 Development Agreement"). PAM countersigned the document and returned it to Graham, seeking

6

confirmation of his agreement.  (A copy of the 2017 Development Agreement is attached hereto as Exhibit C and incorporated herein by reference).

34. Although there were minor changes in the 2017 Development Agreement, it was largely identical to the 2015 Development Agreement including, without limitation, the provision regarding the Profit Participation Payment whereby "[u]pon the sale of the Project by MedCore, Operator [PAM] shall be entitled to receive fifty percent (50%) of all profits (net of transaction costs and fees) in excess of a two percent (2%) cap rate appreciation in value."  (Exhibit C – 2017 Development Agreement, §3.9).

35. The Project moved forward, with MedCore continuing to act in its role as developer under the terms of the 2015 and 2017 Development Agreements.

36. An affiliate of MedCore, PAM Dover IRF, LLC purchased real property located on Mckee Road in the City of Dover, Delaware for the Project (the "Property").

37. As contemplated by Section 1.3 of the 2015 and 2017 Development Agreements, on May 19, 2017, PAM Dover IRF, LLC, as Lessor, and PAM, as Lessee, entered into a Lease Agreement for PAM Rehabilitation Hospital of Dover.  (A copy of the Lease Agreement is attached hereto as Exhibit D and incorporated herein by reference).

38. The Lease Agreement provided that Lessor will construct "an approximately 42,000 square foot facility to be utilized  as an approximately 34-bed inpatient rehabilitation hospital, together with all ancillary services to support the inpatient rehabilitation hospital" on Lessor's Property in the City of Dover, Delaware.  (Exhibit D – Lease Agreement, §1.1).

39. Pursuant to the terms of the Lease Agreement, PAM would lease the land, buildings and equipment located on the Property.  (Exhibit D – Lease Agreement, §1.1).

40. The initial term of the Lease Agreement is seventeen years with a right to extend the Lease Agreement for two consecutive periods of five years, all as set forth in the 2015 and 2017 Development Agreements.  (Exhibit D – Lease Agreement, §§1.2, 2.1).

41. Rental payments under the Lease Agreement were to be determined based upon total Project costs.  (Exhibit D – Lease Agreement, §3.1).

42. Additional terms concerning the parties' agreement for the Project and Lease Agreement are set forth on a "Work Letter" attached as Exhibit A to the Lease Agreement that confirmed a MedCore related entity would be purchasing the real property to construct the facility and MedCore would function as the Project Developer, at the fees that are outlined in the 2015 and 2017 Development Agreements.  (Exhibit D – Lease Agreement, Exhibit A).

43. PAM Dover IRF, LLC and Dover DE IRF, both MedCore related entities, subsequently entered into a Lease Assignment and Assumption Agreement dated October 11, 2017 wherein PAM Dover IRF, LLC assigned all of its rights, title and interest in the Lease Agreement to Dover DE IRF.  (A copy of the Lease Assignment and Assumption Agreement is attached hereto as Exhibit E and incorporated herein by reference).

44. The Lease Assignment and Assumption Agreement was endorsed by PAM. (Exhibit E – Lease Assignment and Assumption Agreement).

45. On October 17, 2017, Dover DE IRF entered into a First Amendment to Lease Agreement ("First Amendment") with PAM.  (A copy of the First Amendment to Lease Agreement is attached hereto as Exhibit F and incorporated herein by reference)

46. The purpose of the First Amendment was to correct an inconsistency between the Work Letter and related documents regarding the remedy to PAM in the event of late delivery of the Project.  (Exhibit F – First Amendment, pg. 1).

47. Per the terms of the First Amendment, substantial completion of the Project would be on or before the last day of the fourteenth month after the notice to proceed is delivered to the General Contractor. (Exhibit F – First specified, §2).

48. Work on the Project commenced, and by February, 2019, the work was complete and accepted by PAM.

49. As a result, on February 15, 2019, Dover DE IRF and PAM entered into a Commencement Date Rider and Second Amendment to Lease Agreement ("Second Amendment"). (A copy of the Second Amendment is attached hereto as Exhibit G and incorporated herein by reference).

50. The Second Amendment confirmed that Dover DE IRF substantially completed the work, and PAM "has accepted the Leased Property in the condition required by the Lease and the Work Letter." (Exhibit G – Second Amendment, pg. 1).

51. The Lease was thus amended to provide that the commencement date of the initial term of the lease was February 15, 2019, and the expiration date of the term of the lease would be February 14, 2036. (Exhibit G – Second Amendment, §§1, 2).

52. The hospital, now known as "PAM Rehabilitation Hospital of Dover", subsequently opened for business on or about March 2019 at its location at 1240 Mckee Road, Dover, Delaware 19904.

53. Since completion of the Project, upon information and belief, Dover DE IRF entered into a contract to sell the Property to a third party purchaser.

54. According to MedCore, the sale of the Property is scheduled to close on May 19, 2020.

55. Dover DE IRF has requested PAM execute a Third Amendment to Lease Agreement, setting the final project costs and confirming final monthly lease amounts, along with documents associated with the sale of the Property to a third-party.

56. Despite PAM's substantial concerns regarding the propriety of the Project Costs sought to be included, PAM has agreed to the final amount and to the final monthly lease payment amount set forth in the proposed Third Amendment to Lease.

57. As the parties' relationship will be terminating upon Dover DE IRF's sale of the Property, PAM sought information from MedCore regarding the amount of its Profit Participation Payment upon the sale of the Property.

58. Pursuant to the plain language of the 2015 Development Agreement and 2017 Development Agreement, PAM is entitled to a share of the profit received from that sale, the Profit Participation Payment defined above, which will exceed Seventy Five Thousand Dollars ($75,000.00).

59. Despite the plain language of the parties' contracts, however, MedCore has repudiated the contracts and is refusing to make any Profit Participation Payment despite demand having been made therefor.

60. MedCore has taken the position that the 2015 Development Agreement "expired" and that the parties never finally agreed to the terms of the 2017 Development and, as such, MedCore has no obligation to honor the provisions contained in either Agreement, including the Profit Participation Payment.

61. PAM disputes that the relevant provision from the 2015 Development Agreement "expired"; instead, by its very terms the sole provision of the 2015 Development Agreement that

expired was MedCore's right to be the exclusive developer of the Project, as defined therein. (Exhibit A - 2015 Development Agreement, at §1.1).

62. There is absolutely nothing in the 2015 Development Agreement that could possibly be construed to suggest that the remainder of that agreement, including the Profit Participation Payment, would end after twenty-four months.

63. State differently, even if MedCore's right to serve as developer of the Project ceased in February 2017, the remaining obligations of MedCore, and the rights of PAM with respect to the Project as a whole, did not and could not terminate.

64. PAM also disputes that the parties did not agree to the execution of the 2017 Development Agreement, as evidenced by the fact that MedCore continued in its role as developer.

65. However, irrespective of whether MedCore's role as developer was under the 2015 Development Agreement, 2017 Development Agreement, or under the terms of the Lease, MedCore remains nonetheless bound by the terms of the 2015 Development Agreement (or 2017 Development Agreement) with respect to the Profit Participation Payment.

## COUNT I
## BREACH OF CONTRACT

66. PAM incorporates the above paragraphs by reference as though set forth fully herein.

67. In entering into the 2015 Development Agreement, MedCore agreed that, upon the "flipping" of the Property to a third-party, PAM would be entitled to payment in the form of Profit Participation Payment.

68. There are no unmet conditions precedent to PAM's right to the Profit Participation Payment upon the sale of the Property.

69. MedCore has repudiated its obligation to make the Profit Participation Payment and is refusing to make any payment on the sale of the Property despite demand having been made therefor.

70. MedCore's conduct constitutes breach of its contractual duties, as well as a breach of the duty of good faith and fair dealing in the parties' contracts and is malicious and outrageous.

71. MedCore's breach of contract has resulted in foreseeable damages in an amount not less than the Profit Participation Payment owed to PAM for which claim is hereby made.

72. MedCore has a duty to accurately account to PAM for the Profit Participation payment and demand for an accounting is hereby made.

73. In addition to recovery of damages incurred by PAM as a result of MedCore's breach of its obligations, PAM is also entitled to recovery of its attorneys' and expert witnesses' fees and costs pursuant to Sections 3.3 of the 2015 Development Agreement. (Exhibit A – 2015 Development Agreement, §3.3).

## COUNT II
## BREACH OF CONTRACT

74. PAM incorporates the above paragraphs by reference as though set forth fully herein.

75. Alternatively, in entering into the 2017 Development Agreement, MedCore agreed that, in the event of the sale of the Property, PAM would be entitled to payment in the form of the Profit Participation Payment.

76. There are no unmet conditions precedent to PAM's right to the Profit Participation Payment upon the sale of the Property.

77. MedCore has repudiated its obligation to make the Profit Participation Payment and is refusing to make any payment on the sale of the Property despite demand having been made therefor.

78. MedCore's conduct constitutes breach of its contractual duties, as well as a breach of the duty of good faith and fair dealing in the parties' contracts and is malicious and outrageous.

79. MedCore's breach of contract has resulted in foreseeable damages in the Profit Participation Payment owed to PAM for which claim is hereby made.

80. MedCore has a duty to accurately account to PAM for the Profit Participation payment and demand for an accounting is hereby made.

81. In addition to recovery of damages incurred by PAM as a result of MedCore's breach of its obligations, PAM Square is also entitled recovery of its attorneys' and expert witnesses' fees and costs pursuant to Sections 3.3 of the 2017 Development Agreement. (Exhibit C – 2017 Development Agreement, §3.3).

## COUNT III
## DECLARATORY JUDGMENT

82. PAM incorporates the above paragraphs by reference as though set forth fully herein.

83. Pursuant to Federal law, the Court possesses the power to "declare the rights and other legal relations of any interested party. . . ." 28 U.S.C.A. §2201.

84. An actual or justiciable controversy exists or is imminent between the parties in this case, thus this Court possesses the power to declare the rights, status and legal relations of the parties involved.

85. This case presents an actual and justiciable controversy between PAM and MedCore relating to their respective rights, obligations and duties with respect to the 2015 Development Agreement, 2017 Development Agreement and the Profit Participation Payment.

86. All parties who have an interest in, or who would be affected by, a declaratory judgment entered by this Court have been joined.

87. PAM seeks a declaratory judgment that Defendant is in violation of the 2015 Development Agreement and 2017 Development Agreement in purporting to repudiate the contracts and refusal to make the Profit Participation Payment in connection with the impending sale of the Property.

88. In addition, the 2015 Development Agreement and 2017 Development Agreement contain other provisions and restrictions on MedCore, including but not limited to a non-competition provision, which, presumably, MedCore takes the position are no longer applicable despite the clear language of the parties' agreements.

89. Absent a declaration from this Court, the rights, status and other legal relations of the parties as they relate to the 2015 Development Agreement and 2017 Development Agreement are uncertain.

90. Only the entry of a declaratory judgment will terminate the uncertainty and controversy that has given rise to this proceeding.

91. In this Court, PAM seeks a judicial determination that:

A. The 2015 Development Agreement, including but not limited to the requirement that MedCore Partners, LLC is obligated to pay PAM a Profit Participation Payment, is valid and binding on MedCore Partners, LLC;

B. Alternatively, the 2017 Development Agreement, including but not limited to the requirement that MedCore Partners, LLC is obligated to pay PAM a Profit Participation Payment, is valid and binding on MedCore Partners, LLC;

C. MedCore Partners, LLC is liable to pay to PAM a Profit Participation Payment calculated as fifty percent (50%) of all profits (net of transaction costs and fees) in excess of a two percent (2%) cap rate appreciation in value, upon the sale of the Property; and

D. MedCore Partners, LLC has a duty to accurately account to PAM for the Profit Participation Payment upon the sale of the Property.

## **RELIEF REQUESTED**

WHEREFORE Plaintiff PAM Squared at Dover, LLC respectfully requests that this Honorable Court award the following relief:

A. Enter a Declaratory Judgment that the 2015 Development Agreement and/or 2017 Development Agreement, including but not limited to the requirement that MedCore Partners, LLC pay PAM Squared at Dover, LLC a Profit Participation Payment, are valid and binding against MedCore Partners, LLC;

B. MedCore Partners, LLC has a duty to accurately account to PAM Squared at Dover, LLC for the amount of the Profit Participation Payment upon the sale of the Property;

C. Enter an Order directing an accounting and judgment against MedCore Partners, LLC for the Profit Participation Payment to which PAM Squared at Dover, LLC is entitled;

D. Enter an award of actual and consequential damages in excess of $75,000 to PAM Squared at Dover, LLC for MedCore Partners, LLC's breach of contract in an amount to be determined at trial;

E.  Enter an award of attorneys' and expert witnesses' fees and costs to PAM Squared at Dover, LLC as the prevailing party in this litigation; and

F.  Enter such other and further relief as the equities of the case may require and as this Court may deem just and proper under the circumstances.

## JURY TRIAL DEMANDED

Plaintiff PAM Squared at Dover, LLC respectfully demands a trial by jury on all issues so triable.

Respectfully submitted,

BARLEY SNYDER LLP

By:    /S/ Stephanie DiVittore    
Stephanie DiVittore, Esquire
Attorney I.D. No. 85906
sdivittore@barley.com
William C. Boak, Esquire
Attorney I.D. No. 203506
wboak@barley.com

213 Market Street, 12th Flr.
Harrisburg, PA 17101
(717) 231-6603

Attorneys for PAM Squared at Dover, LLC

7802835.1